OPINION
Appellant, Donald L. Johnson, appeals from the judgment of the Trumbull County Court of Common Pleas. On December 7, 2000, the Trumbull County Grand Jury indicted appellant on one count of aggravated burglary with a firearm specification and one count of kidnapping with a firearm specification. After a jury trial, appellant was found guilty on both counts and specifications. Appellant was subsequently sentenced to three years imprisonment on the aggravated burglary count, with an additional three years for the firearm specification, and three years on the kidnapping count with the firearm specification merging. The sentences are to run concurrently.
On October 15, 2000, the victim, Bradford Pirigyi ("Pirigyi"), hosted a party at his home. During the party, Pirigyi wrote a personal check out to "cash" in the amount of $1,000. He gave the check to another man who left the party and returned later with cocaine.
The following day, Pirigyi heard a knock at his door. When he answered the door, two black males and one white male were present. One of the black males was holding a shotgun. Pirigyi noticed that the white male, later identified as appellant, had a partially visible pistol in his pants. The three males entered Pirigyi's home and ordered him into the kitchen. They told Pirigyi that he owed them one thousand dollars.
The intruder carrying the shotgun pointed it at Pirigyi. The unarmed black male ordered Pirigyi to write out a note giving the trio permission to be in his home. Pirigyi assured the intruders that he had no money but that he had access to money in the joint checking account he shared with his mother. He stated that if a black man accompanied him, his mother would not let him withdraw the money so he had to withdraw the money alone. The intruders agreed to let Pirigyi go to the bank himself. Appellant's car was blocking Pirigyi's car in the driveway, so appellant moved his car and Pirigyi drove away. Rather than driving to the bank, Pirigyi drove to his grandmother's house where he called his mother at work and instructed her to call the police.
Several Niles police officers surrounded Pirigyi's home a short while later. The captain observed a black male and a white male inside the home. Police then ordered the men out and the three emerged from the home and were patted down for weapons.
En route to Pirigyi's home, Niles Patrolman Daniel Adkins, Jr. received a call regarding three males exiting a car and walking through a wooded area just one block west of Pirigyi's home. Adkins located a car registered to appellant in the area. Adkins and Captain Simeone proceeded to search the car. They located shells, a single-barrel shotgun and a chrome revolver in the trunk. Pirigyi identified the three intruders from photographic lineups at the Niles City Police Department.
Following the jury's guilty verdict, appellant filed this timely appeal, asserting two assignments of error.
Appellant's first assignment of error is:
 "The appellant's convictions for aggravated burglary and kidnapping were not supported by sufficient evidence."
In a determination as to the sufficiency of the evidence, the test is "whether after viewing the probative evidence and the inference drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt."[1]
Moreover, "[a] reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt."[2]
Appellant argues that the state did not present sufficient evidence to support his aggravated burglary and kidnapping convictions. We disagree.
R.C. 2911.11(A)(2), the aggravated burglary with a firearm specification statute reads:
 "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
"* * *
 "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under offender's control."
Appellant argues that the state failed to introduce sufficient evidence that appellant trespassed by use of force, stealth or deceit; had the intent to commit a crime during any trespass, harmed or attempted to harm Pirigyi, or that appellant possessed a deadly weapon or ordnance.
Specifically, appellant argues that there was no trespass because Pirigyi opened the door to them and let them in without ever asking them to leave. However, the record reveals that appellant and the two other intruders approached Pirigyi's door, brandishing weapons, at which point Pirigyi testified they pushed their way in. Even if the intruders did not physically force their way in, the fact that the state presented evidence that they were carrying weapons, visible to Pirigyi, is sufficient evidence to prove that the intruders were trespassers entering by way of force.
Appellant also argues that the state did not present sufficient evidence to demonstrate that appellant had any knowledge of any crime that might occur at Pirigyi's residence. Appellant admitted at trial that he had been on a five-day crack cocaine binge and had not slept or eaten but that he could not recall any conversations in the car en route to Pirigyi's house about committing any crime.
At trial, the state presented evidence that appellant was aware that Ford and Kaczmark were carrying weapons and that he was driving them to Pirigyi's house to collect money. Although at trial appellant testified that he detected no animosity by Ford and Kaczmark toward Pirigyi, a police report admitted at trial noted that he told the police that, "they [Kaczmark and Ford] were upset because of bad checks that were written."
Appellant also argues that there was insufficient evidence to prove that he possessed a weapon during the incident. However, at trial, Pirigyi identified appellant as being the intruder carrying the revolver in his pants pocket. He testified that the revolver was visible when the intruders gained entrance to Pirigyi's home and when the intruders forced Pirigyi into his kitchen, demanding money. The state also presented evidence at trial that both a shotgun and a revolver were later recovered in a car registered to appellant.
Although appellant contends that he was never in possession of any weapon, the state met its burden of providing sufficient evidence that, if believed, would allow the matter to go the jury.
When viewing the foregoing evidence presented in a light most favorable to the prosecution, a jury could reasonably conclude that appellant was guilty of aggravated robbery and carried a revolver during the incident, consistent with the firearm specification.
Regarding the kidnapping conviction, appellant also argues the sufficiency of the evidence presented. Appellant contends that the state did not provide sufficient evidence to support the kidnapping conviction. In order to convict appellant of kidnapping, the jury had to find that he did, by force, threat or deception, remove Pirigyi from the place where he was found and/or restrained Pirigyi of his liberty for the purpose of facilitating the commission of any felony or flight thereafter.[3]
At trial, the Pirigyi testified that when he answered his door, the intruders, brandishing weapons visible to Pirigyi, ordered him into his kitchen at gunpoint and demanded money and the written note. Once Pirigyi answered his door to intruders with guns who ordered him from where he was, his liberty was restrained. Moreover, once he was ushered into his kitchen and the demand for money was made, the second element requiring an intent on committing a felony, namely extortion, was met. Therefore, this restraint on Pirigyi's liberty and freedom of movement by gunpoint, when viewed in a light most favorable to the prosecution, meets the sufficiency requirement.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error is:
 "The appellant's convictions for aggravated robbery (sic) and kidnapping are against the manifest weight of the evidence."
Whereas a determination of the sufficiency of the evidence requires a finding on whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, manifest weight contests the believability of the evidence presented.[4]
 "In determining whether the verdict was against the manifest weight of the evidence, `* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[5]
The thrust of appellant's argument in his second assignment of error is that the evidence presented by the state was so unreliable and incredible that the conviction was against the manifest weight of the evidence. Applying the proper manifest weight standard, we are not persuaded by appellant's argument.
Specifically, as noted above, the state presented sufficient evidence for all of the elements of the offense to be proven beyond a reasonable doubt. Moreover, appellant's own testimony revealed that he knew that he was driving two men, whom he knew were armed, to Pirigyi's home to collect money. Furthermore, the defense challenged the credibility of the prosecution's evidence by asserting that appellant had no knowledge of any animosity toward Pirigyi by the trio and that appellant lacked the ability to form any intent with regard to the aggravated burglary.
The jury, after hearing all of the testimony, elected to believe Pirigyi's account of the events. Therefore, nothing in the record suggests that "the jury clearly lost its way creating a manifest miscarriage of justice."
Appellant's second assignment of error is without merit. The judgment of the trial court is affirmed.
DONALD R. FORD, J., DIANE V. GRENDELL, J., concur.
[1] (Internal quotation marks and citations omitted.) State v. Schlee
(Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13.
[2] State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
[3] R.C. 2905.01(A).
[4] State v. Davis (1988), 38 Ohio St.3d 361, 365-366.
[5] (Citations omitted.) State v. Davis (1988), 49 Ohio App.3d 109,113.